STATE OF NORTH CAROLINA v. TERRY RICHMOND

No. COA10-1296

(Filed 6 September 2011)

**Search and Seizure—drugs—pat down—reasonable articulable suspicion**

The trial court did not err in a drugs case by denying defendant's motion to suppress evidence obtained from the search of his pants pocket and the seizure of eleven bags containing marijuana. The evidence showed that an officer had a reasonable belief that for his safety he should perform a pat down of defendant. Further, based on the officer's training and experience, he immediately formed the opinion that the bulge in defendant's pocket contained a controlled substance.

Appeal by defendant from order entered 30 August 2010 by Judge Howard E. Manning, Jr. in Superior Court, Person County. Heard in the Court of Appeals on 26 April 2011.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Steven F. Bryant, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by Maitri "Mike" Klinkosum, for defendant-appellant.*

STROUD, Judge.

Terry Richmond ("defendant") appeals from the denial of his motion to suppress, arguing that (1) the search of his person was unlawful because the officer "had neither reasonable suspicion nor probable cause to conduct the search of [defendant][,]" and (2) the nature of the object seized from him during the pat-down was not immediately apparent. For the following reasons, we affirm the denial of defendant's motion to suppress.

I. Background

On 12 April 2010, defendant was indicted for possession with intent to manufacture, sell, and deliver marijuana in violation of N.C. Gen. Stat. § 90-95(a)(1). On 26 July 2010, defendant filed a motion to suppress, which was heard at the 30 August 2010 Criminal Session of Superior Court, Person County. Following the hearing, the trial court denied defendant's motion to suppress the search of his person, and

defendant gave notice of appeal in open court. Defendant subsequently pled guilty to possession with intent to manufacture, sell, and deliver marijuana but reserved his right to appeal the denial of his motion to suppress. The trial court sentenced defendant to four to five months imprisonment but suspended that sentence and placed defendant on supervised probation for 24 months. On 30 August 2010, the trial court entered its written order denying defendant's motion to suppress, making the following findings of fact:

1. On December 16, 2009, Investigator Will Dunkley with the Roxboro Police Department applied for and was issued a search warrant for a private residence at 410 Green Street in Roxboro and an individual, Rodney Fuller.

2. Investigator Dunkley and other officers executed the search warrant on December 16, 2009 at 410 Green St., and located the defendant inside the residence.

3. The defendant was ordered to the ground, cuffed and stood up. Investigator Dunkley patted down the exterior of the defendant's left front pocket.

4. Based on the officer's training and experience, he immediately formed the opinion that the bulge contained a controlled substance.

5. Investigator Dunkley removed the item from the defendant's pocket, and found it to be 11 bags of marijuana.

Based on these findings, the trial court made the following conclusions:

1. The investigator had a right to detain the defendant for officer safety when he was located in a private residence which was the subject of a search warrant.

2. The investigator had a right to frisk the defendant for weapons for officer safety when he was located in a private residence which was the subject of a search warrant for illegal drugs.

3. The investigator's frisk caused the officer, based on his training and experience, to believe that what he was touching was a package containing illegal drugs, and therefore he had a right to remove the object from the defendant's pocket.

4. The defendant's motion to suppress the search should be denied.

As noted above, defendant argues on appeal that the denial of his motion to suppress was error as the search of his person was unlawful and the nature of the object seized from his pocket was not immediately apparent to the police officer.

## II. Motion to Suppress

### A. Standard of review

Defendant contends that the trial court erred when it denied his motion to suppress.

> It is well established that "[t]he standard of review to determine whether a trial court properly denied a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Tadeja*, 191 N.C. App. 439, 443, 664 S.E.2d 402, 406-07 (2008). "The trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, (citations, brackets, and quotation marks omitted), *appeal dismissed*, 362 N.C. 364, 664 S.E.2d 311-12 (2008). Additionally, "findings of fact to which defendant failed to assign error are binding on appeal." *Id.*

*State v. Williams*, ___ N.C. App ___, ___, 703 S.E.2d 905, 907, *disc. review denied*, ___ N.C. ___, 707 S.E.2d 237 (2011). Although assignments of error are no longer required under North Carolina Rule of Appellate Procedure 10(a), in order to challenge a finding of fact as unsupported by the evidence, the appellant must make this argument in his brief. *See* N.C.R. App. P. 28(a) (stating that "[t]he scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). Defendant does not clearly object to any particular finding of fact, but his second argument can be construed as challenging finding of fact No. 4 as unsupported by the evidence. The other findings of fact are therefore binding on appeal, and we will consider the sufficiency of the evidence to support finding No. 4. *See Williams*, ___ N.C. App. At ___, 703 S.E.2d at 907.

### B. Pat-down of defendant

Defendant citing N.C. Gen. Stat. § 15A-256 (2009) and *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238 (1979) argues that Investigator Dunkley's search of defendant was unlawful. N.C. Gen. Stat. § 15A-256 permits officers who are executing a search warrant to detain persons present at the time of the execution of the search warrant, and

to conduct a search of such persons if the search of the premises, vehicle, or person designated in the warrant does not produce the items named in the warrant and if the property in the warrant could be concealed upon a person. The United States Supreme Court in *Ybarra* held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91, 62 L. Ed. 2d at 245 (citation omitted). N.C. Gen. Stat. § 15A-256 would have permitted Investigator Dunkley to detain defendant during the search of the residence, but the unchallenged findings of fact state that Investigator Dunkley did not immediately search defendant's person during the execution of the warrant but merely "patted down the exterior of the defendant's clothing[.]" Under N.C. Gen. Stat. § 15A-255 (2009), "[a]n officer executing a warrant directing a search of premises or of a vehicle may, if the officer reasonably believes that his safety or the safety of others then present so requires, search for any dangerous weapons by an *external patting of the clothing of those present.*" (emphasis added) *See State v. Jones*, 97 N.C. App. 189, 196, 388 S.E.2d 213, 217 (1990) (noting that "[a]n officer executing a search warrant is authorized by statute to detain persons present on the premises, G.S. 15A-256, and to frisk those present for weapons if he reasonably believes that there is a threat to the safety of himself or others. G.S. 15A-255. These provisions are clearly designed to enable officers to ensure their safety and to prevent possible suspects from fleeing or destroying evidence. *See State v. Watlington*, 30 N.C. App. 101, 226 S.E.2d 186, *disc. rev. denied and appeal dismissed*, 290 N.C. 666, 228 S.E.2d 457 (1976). To require officers to serve the warrant prior to taking the precautionary measures authorized by G.S. 15A-255 and 15A-256 would frustrate the purposes of the [warrant] statutes.").

This Court has further stated that "[t]he purpose of the officer's frisk or pat-down is for the officer's safety; as such, the pat-down is limited to the person's outer clothing and to the search for weapons that may be used against the officer." *State v. Robinson*, 189 N.C. App. 454, 458, 658 S.E.2d 501, 504 (2008) (citation and quotation marks omitted). Therefore, we have stated that a police officer is permitted to conduct a stop and pat-down, when he "observes unusual behavior which leads him to conclude, in light of his experience, that criminal activity may be occurring and that the person may be armed and dangerous[.]" *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968)). *See State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007) (noting that *Terry* established that "[a] police

officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway."). Reasonable suspicion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994) (citing *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906 and *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979)). A court considers the totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion. *Bernard*, 184 N.C. App. at 29, 645 S.E.2d at 783 (citation omitted).

The trial court only made two findings of fact relating to Investigator Dunkley's pat-down of defendant:

2. Investigator Dunkley and other officers executed the search warrant on December 16, 2009 at 410 Green St., and located the defendant inside the residence.

3. The defendant was ordered to the ground, cuffed and stood up. Investigator Dunkley patted down the exterior of the defendant's left front pocket.

Based on these findings the trial court concluded

2. The investigator had a right to frisk the defendant for weapons for officer safety when he was located in a private residence which was the subject of a search warrant for illegal drugs.

Based on these findings we cannot determine as a matter of law whether Investigator Dunkley "reasonably believe[d] that his safety or the safety of others then present" required a pat down of defendant for dangerous weapons during the execution of the search warrant, *see* N.C. Gen. Stat. § 15A-255, or any observations by Investigator Dunkley of "unusual behavior which [led] him to conclude, in light of his experience, that criminal activity may be occurring and that [defendant] may be armed and dangerous[.]" *See Robinson*, 189 N.C. App. at 458, 658 S.E.2d at 504. "When a trial court conducts a hearing on a motion to suppress, the court should make findings of fact that will support its conclusions as to whether the evidence is admissible. If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court." *State v. Smith*, 346 N.C. 794, 800, 488 S.E.2d 210, 214 (1997) (citation and quotation marks omitted). Here, there is no conflict in the evidence

and the record shows that Investigator Dunkley reasonably believed that the safety of the officers justified the pat-down of defendant. Investigator Dunkley applied for the search warrant and, with other officers, conducted the search. Investigator Dunkley's application stated that the basis for the search was that law enforcement believed that illegal narcotics were being sold from the residence, as officers had conducted two previous controlled buys from this residence, one only 72 hours prior to the warrant application on 16 December 2009. When officers entered, they found six individuals, including defendant, and they secured each individual pursuant to N.C. Gen. Stat. § 15A-256. In the residence officers discovered drugs in plain view. Investigator Dunkley in response to the State's question "Why are you concerned about officer safety on a search warrant like this?" explained that it was his experience as a narcotics officer that, "Where there's drugs, there's guns[.]" As there was no conflict in the evidence and the evidence shows that Investigator Dunkley reasonably believed that for his safety he should perform a pat down of defendant, *see* N.C. Gen. Stat. § 15A-255, *Robinson*, 189 N.C. App. at 458, 658 S.E.2d at 504, we find no merit in defendant's argument.

C. Immediately apparent nature of the object

Defendant next challenges the trial court's conclusion that Investigator Dunkley had probable cause to seize the object from defendant's pocket based on the plain feel doctrine. In explaining the "plain feel" doctrine, we have stated that

> [i]f during "[a] limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime." *State v. Streeter*, 17 N.C. App. 48, 50, 193 S.E.2d 347, 348 (1972). "Evidence of contraband, plainly felt during a pat-down or frisk, may . . . be admissible, provided the officer had probable cause to believe that the item was in fact contraband." [*State v. Shearin*, 170 N.C. App. 222, 226, 612 S.E.2d 371, 376 (2005)] (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-77, 124 L. Ed. 2d 334, 346-47 (1993)).

> Under the "plain feel" doctrine if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. *Minnesota*, 508 U.S. 366, 124 L. Ed. 2d 334.

This Court must consider the totality of the circumstances in determining whether the incriminating nature of the object was immediately apparent and thus, whether probable cause existed to seize it. *State v. Briggs*, 140 N.C. App. 484, 492, 536 S.E.2d 858, 863 (2000). A probable cause determination does not require hard and fast certainty by the officer but involves more of a common-sense determination considering evidence as understood by those versed in the field of law enforcement. *Id.* at 493, 536 S.E.2d at 863.

*Robinson*, 189 N.C. App. at 458-59, 658 S.E.2d at 504-05.

On appeal, defendant contends that the nature of the contraband was not "immediately apparent" to Investigator Dunkley because he could not testify that he identified which specific drugs he was touching. However, under the plain feel doctrine, to conduct a search an officer need only have probable cause to believe the object felt during the pat down was contraband before he seized it, not that he determine the specific controlled substance before taking action. *See id.* As noted above, the probable cause determination, "involves more of a common-sense determination considering evidence as understood by those versed in the field of law enforcement." *See id.* Here, the trial court found that when Investigator Dunkley patted down defendant during the execution of the warrant he "felt a bumpy bulge in the defendant's left front pocket" and based on Investigator Dunkley's "training and experience, he immediately formed the opinion that the bulge contained a controlled substance."

As noted above, defendant challenges the sufficiency of the evidence to support the trial court's finding that Investigator Dunkley immediately formed the opinion that defendant's pocket contained a controlled substance. Defendant focuses upon Investigator Dunkley's testimony that he felt a "knot" in the defendant's pants which he could not "describe with any specificity." But Defendant's argument takes one of Investigator Dunkley's statements out of context. Investigator Dunkley testified as follows regarding his pat-down of defendant:

[Defense counsel:] So, if your hands are out, then how could you determine that what was in his pocket was some sort of contraband?

[Investigator Dunkley:] Through six years of doing this job, knowing what it feels like.

Q. What did it feel like?

A. A knot of lumps. I don't know how else to describe it to you.

Q. Did you have your hands out—just with your hands flat out, you could feel a knot of lumps?

A. Yes, ma'am. They got good feeling in them.

Q. Exactly how were you feeling him?

A. Just like that.

Q. So, were you just patting down for weapons or were you groping?

A. I don't believe there was any groping involved. It was a pat-down for weapons. I don't know how to describe it to you other than a pat-down for weapons.

Q. And somehow with this pat-down for weapons, you felt a knot of something?

A. Yes.

Q. And why would that be considered contraband in your experience?

A. Why would it?

Q. Um-hum.

A. Because I discovered that same thing many times.

Q. But what was it when you discovered it before?

A. Bags of marijuana, bags of cocaine, bags of crack.

This evidence supports the trial court's finding that "[b]ased on the officer's training and experience, he immediately formed the opinion that the bulge contained a controlled substance." We uphold the trial court's conclusion that the facts were sufficient to justify a search of defendant's pants pocket and seizure of the eleven bags containing marijuana.

For the foregoing reasons, we affirm the trial court's denial of defendant's motion to suppress.

AFFIRMED.

Judges McGEE and BEASLEY concur.