IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-18

 Filed: 17 December 2019

Craven County, No. 17 CRS 51014

STATE OF NORTH CAROLINA

 v.

KAYSHAWN CHRISTOPHER JOHNSON

 Appeal by defendant from order entered 6 August 2018 by Judge Charles H.

Henry in Craven County Superior Court. Heard in the Court of Appeals

22 August 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Alexander
 Walton, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy
 Dickinson-Schultz, for defendant-appellant.

 ARROWOOD, Judge.

 Kayshawn Christopher Johnson (“defendant”) appeals from the trial court’s

6 August 2018 order denying his motion to suppress evidence he argues was seized

in violation of his rights under the Fourth Amendment to the United States

Constitution. Defendant contends, inter alia, that the law enforcement officer who

seized the evidence at issue lacked probable cause to search his person and that the

warrantless search that produced the evidence was therefore unconstitutional. For

the following reasons, we affirm.
 STATE V. JOHNSON

 Opinion of the Court

 I. Background

 Captain Jesse Pittman began working at the Craven County Sheriff’s Office

over 25 years ago. During his time with the Sheriff’s Office, Captain Pittman served

on road patrol for approximately eight years, during which he encountered

individuals who possessed controlled substances, which he had been trained to

identify. At times relevant to this appeal, Captain Pittman served in an

administrative role.

 On the morning of 5 April 2017, Captain Pittman stopped at a gas station to

purchase a cup of coffee. He was casually dressed, but wore his badge visibly and

wore a pistol on his ankle.

 While walking into the station, Captain Pittman observed defendant talking

loudly and using abusive language on a cellular telephone outside of the station.

Inside the station, the clerk told him that she was concerned that defendant was

bothering other customers with his conversation. Captain Pittman exited the station,

returned to his vehicle, and called for assistance. He then approached defendant, and

Sergeant William Scott arrived as backup.

 After approaching, Captain Pittman identified himself as law enforcement and

asked defendant to terminate his conversation. Defendant complied with his request

after some delay. Captain Pittman told defendant that “he needed to finish his

 -2-
 STATE V. JOHNSON

 Opinion of the Court

conversation elsewhere, [and] that it was inappropriate to be using that kind of

language” in front of the gas station.

 Defendant then “began to shift from foot to foot . . . [and] look side to side” and

over Captain Pittman’s shoulder. Seeing this, Captain Pittman became concerned

that defendant might pose him danger; in his words, “his nervousness made me

nervous.” Captain Pittman asked defendant whether he had any weapons on his

person, and he replied that he did not. Captain Pittman remained concerned,

however, so he asked defendant for consent to pat him down for weapons. Defendant

hesitated, but consented.

 While conducting a flat-handed pat-down of defendant for weapons, Captain

Pittman felt a “soft, rubbery” item “like . . . a wad of rubber bands” in defendant’s

pocket that was “immediately apparent to [him] that was associated with the

packaging normally used to package and sell narcotics.” Captain Pittman completed

the pat-down for weapons and then returned to the suspicious object, manipulated it

to ensure that it was what he thought it was, and then reached into defendant’s

pocket. He removed three tied up plastic bag corners (“corner bags”) containing a

white, powdery substance he believed to be cocaine, as well as a tube of Orajel liquid.

Captain Pittman handed these items to Sergeant Scott, who placed defendant under

arrest for possession of a controlled substance.

 -3-
 STATE V. JOHNSON

 Opinion of the Court

 Sergeant Scott field-tested the powdery substance, which tested negative for

cocaine. Defendant volunteered that the powdery substance was baking soda, and

that he had the Orajel to mix with the baking soda to fool potential buyers into

believing the substance was cocaine. Subsequent testing by the State Bureau of

Investigation corroborated defendant’s statement.

 On 11 December 2017, defendant was indicted for possession with intent to sell

and deliver a counterfeit controlled substance in violation of N.C. Gen. Stat. § 90-

95(a)(2) (2017).

 On 19 June 2018, defendant filed a motion to suppress and a supporting

affidavit, arguing that: (1) he did not give consent to the pat-down for weapons or the

search into his pocket; and (2) Captain Pittman’s conduct in reaching into his pocket

exceeded the scope of a weapons search, thereby violating his rights under the Fourth

Amendment to the United States Constitution. Defendant asked the trial court to

suppress any evidence obtained as a result of Captain Pittman’s search. On

29 June 2019, defendant filed an addendum to his motion to suppress, arguing that

he had been illegally detained, and that Captain Pittman’s search was therefore void

ab initio.

 Defendant’s motion to suppress came on for hearing on 3 July 2018. On

6 August 2018, the trial court entered an order denying defendant’s motion (the “MTS

Order”). In the MTS Order, the trial court concluded that: (1) defendant was not

 -4-
 STATE V. JOHNSON

 Opinion of the Court

detained by Captain Pittman; (2) defendant consented to the pat-down for weapons;

and (3) “Pittman felt something unusual in [defendant’s] right pants pocket which

[Captain Pittman] immediately concluded, based on his training and experience, was

packaging for controlled substances[,]” and that Captain Pittman accordingly had

probable cause to believe that defendant was in possession of contraband and to place

defendant under arrest after seizing the contents of defendant’s pocket.

 That same day, defendant pleaded guilty to the offense charged, specifically

reserving his right to appeal from the MTS Order as part of the plea arrangement.

Defendant was sentenced to 5 to 15 months imprisonment, which the trial court

suspended for 18 months of supervised probation. Defendant timely gave oral notice

of appeal from the MTS Order in open court.

 II. Discussion

 This case requires us to determine whether the trial court erred by concluding

that Captain Pittman did not violate defendant’s Fourth Amendment protection from

“unreasonable searches and seizures[.]” U.S. Const. amend. IV.

 Defendant argues that: (1) Captain Pittman’s warrantless pat-down of

defendant’s person for weapons was unreasonable, because the officers seized him

without reasonable suspicion that he was armed or involved in criminal activity and

his consent to Captain Pittman’s pat-down for weapons was invalid; or, alternatively,

(2) if defendant was not seized by the officers and his consent to be patted down for

 -5-
 STATE V. JOHNSON

 Opinion of the Court

weapons was valid, Captain Pittman exceeded the scope of this consent. Under either

alternative, defendant contends that the evidence obtained as a result of the

constitutionally impermissible search and seizure must be suppressed as fruit of the

poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484-88, 9 L. Ed. 2d 441,

453-55 (1963).

 We address each argument in turn.

 A. Standard of Review

 Appellate review of the denial of a motion to suppress “is strictly limited to

determining whether the trial [court]’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the [court]’s ultimate conclusions of

law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).

Uncontested findings of fact are binding on appeal. State v. Evans, 251 N.C. App.

610, 613, 795 S.E.2d 444, 448 (2017). We review the trial court’s conclusions of law

de novo. State v. Williams, 366 N.C. 110, 114, 726 S.E.2d 161, 165 (2012).

 B. Seizure/Consent

 First, defendant argues that he was unlawfully seized by Captain Pittman and

Sergeant Scott. We disagree.

 An unlawful seizure invalidates any subsequent consent to search derived

therefrom. See State v. Myles, 188 N.C. App. 42, 51, 654 S.E.2d 752, 758 (citation

 -6-
 STATE V. JOHNSON

 Opinion of the Court

omitted), aff’d, 362 N.C. 344, 661 S.E.2d 732 (2008). Generally, when a law

enforcement officer merely engages with an individual in a public place, the

encounter is consensual and does not implicate Fourth Amendment concerns. State

v. Brooks, 337 N.C. 132, 142, 446 S.E.2d 579, 585-86 (1994) (citation omitted). An

initially consensual interaction with law enforcement becomes a seizure only if, under

the totality of the circumstances, “a reasonable person would [not] feel free to decline

the officer’s request or otherwise terminate the encounter[.]” State v. Icard, 363 N.C.

303, 308-309, 677 S.E.2d 822, 826 (2009) (citations omitted). “Relevant circumstances

include, but are not limited to, the number of officers present, whether the officer

displayed a weapon, the officer’s words and tone of voice, any physical contact

between the officer and the individual, whether the officer retained the individual’s

identification or property, the location of the encounter, and whether the officer

blocked the individual’s path.” Id. at 309, 677 S.E.2d at 827 (citations omitted).

 Defendant concedes that his encounter with Captain Pittman began

consensually, but argues that the encounter transformed into a seizure before

Captain Pittman asked him for his consent to pat him down for weapons. Noting that

the State conceded at the MTS Hearing that Captain Pittman lacked reasonable

suspicion to believe that he was engaged in criminal activity, defendant argues that

the seizure lacked legal justification and that his subsequent consent to Captain

 -7-
 STATE V. JOHNSON

 Opinion of the Court

Pittman’s search was therefore involuntary and insufficient to render the search

lawful.

 Our review of the record confirms that defendant was not seized at the time he

consented to the pat-down for weapons. The trial court’s findings of fact 1-4, which

include the relevant circumstances leading up to defendant’s consent, are not

contested by defendant and are thus binding for the purposes of our analysis. See

Evans, 251 N.C. App. at 613, 795 S.E.2d at 448. These findings of fact include that,

with Sergeant Scott present as backup, Captain Pittman “told [defendant] that it

would be appropriate if [defendant] wanted to continue his conversation to do it

somewhere besides the front of the store[,]” “that [defendant] needed to finish his

conversation elsewhere, and that it was inappropriate to be using . . . profanity at the

entrance of” the gas station.

 These facts do not support defendant’s contention that he was seized within

the meaning of the Fourth Amendment. Defendant adds that he “was cornered

against the gas station wall, unable to leave, with two readily-identified police officers

making demands.” Without more, Captain Pittman’s and Sergeant Scott’s statuses

as law enforcement officers do not render the encounter involuntary. Florida v.

Royer, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236 (1983) (“Nor would the fact that the

officer identifies himself as a police officer, without more, convert the encounter into

a seizure requiring some level of objective justification.”) (citation omitted).

 -8-
 STATE V. JOHNSON

 Opinion of the Court

Furthermore, the record does not contain evidence that defendant’s egress was in any

way obstructed. On the contrary, the facts found by the trial court indicate that

Captain Pittman in fact encouraged defendant to leave the gas station and “finish his

conversation elsewhere.” It was only after defendant hesitated to leave, and thereby

made Captain Pittman nervous that he might be dangerous, that he asked defendant

whether he was armed and requested consent to search for weapons.

 Accordingly, under the totality of these circumstances, we conclude that the

trial court did not err by concluding that defendant was not seized within the meaning

of the Fourth Amendment when he consented to the search for weapons, and that

defendant’s consent gave Captain Pittman legal justification for that search.

 C. Scope of Search

 Second, defendant argues that Captain Pittman exceeded the scope of the

consent he gave to a frisk of his person for weapons. We disagree.

 Consent renders a search presumptively reasonable. Katz v. United States,

389 U.S. 347, 359 n.22, 19 L. Ed. 2d 576, 586 n.22 (1967) (citation omitted). However,

if a law enforcement officer’s search exceeds the scope of the consent given, it must

be justified by other considerations to remain reasonable under the Fourth

Amendment. See State v. Stone, 362 N.C. 50, 57, 653 S.E.2d 414, 419 (2007) (holding

defendant entitled to a new trial because law enforcement officer’s search exceeded

the scope of defendant’s consent and violated defendant’s Fourth Amendment rights).

 -9-
 STATE V. JOHNSON

 Opinion of the Court

 1. Terry Pat-Downs and the “Plain Feel” Doctrine

 In, Terry v. Ohio, the Supreme Court established the circumstances under

which an officer may briefly stop a person and conduct a limited search of their person

with less than probable cause:

 [W]here a police officer observes unusual conduct which
 leads him reasonably to conclude in light of his experience
 that criminal activity may be afoot and that the persons
 with whom he is dealing may be armed and presently
 dangerous, where in the course of investigating this
 behavior he identifies himself as a policeman and makes
 reasonable inquiries, and where nothing in the initial
 stages of the encounter serves to dispel his reasonable fear
 for his own or others’ safety, he is entitled for the protection
 of himself and others in the area to conduct a carefully
 limited search of the outer clothing of such persons in an
 attempt to discover weapons which might be used to
 assault him. Such a search is a reasonable search under
 the Fourth Amendment, and any weapons seized may
 properly be introduced in evidence against the person from
 whom they were taken.

392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911 (1968).

 The carefully limited search of the outer clothing for weapons described in

Terry does not allow an officer to go into a defendant’s pockets to search for drugs.

Sibron v. New York, 392 U.S. 40, 65-66, 20 L. Ed. 2d 917, 936 (1968). However, if a

law enforcement officer conducting a legitimate Terry frisk for weapons “feels an

object whose contour or mass makes its identity [as contraband] immediately

apparent,” the officer may seize the evidence because “there has been no invasion of

the suspect’s privacy beyond that already authorized by the officer’s search for

 - 10 -
 STATE V. JOHNSON

 Opinion of the Court

weapons[.]” Minnesota v. Dickerson, 508 U.S. 366, 375, 124 L. Ed. 2d 334, 346 (1993)

(internal citations omitted). Dickerson established what has since become known as

the plain feel doctrine, which we discuss in further detail infra part 2.b.

 2. Analysis

 In the instant case, both defendant and the State agree that defendant only

consented to a “carefully limited search of the outer clothing” for weapons pursuant

to Terry. Defendant argues that the trial court erred in finding that Captain

Pittman’s pat-down complied with the accepted protocol of a Terry frisk for weapons

and concluding that it was “immediately apparent” to Captain Pittman that the

objects in defendant’s pocket were contraband. We address each argument in turn.

 a. Finding of Fact 5

 Defendant first challenges the trial court’s finding of fact 5 in the MTS Order,

which asserts that the contraband was “immediately apparent” to Captain Pittman

when he initially felt over the pocket during a flat-handed, Terry-compliant pat-down.

Defendant argues that Captain Pittman’s testimony establishes that he suspended

his pat-down at defendant’s pocket to manipulate its contents before developing

probable cause to further investigate those contents.

 Although Captain Pittman’s testimony on direct examination makes the

sequence of events less than clear, his testimony on cross-examination and redirect

examination clarifies that his initial pat-down complied with Terry. He testified that

 - 11 -
 STATE V. JOHNSON

 Opinion of the Court

he felt the objects in defendant’s pocket with a flat hand over defendant’s pants, and

at that point it was immediately apparent to him that the objects were likely corner

bags containing illicit drugs. He then finished his flat-handed pat-down down

defendant’s legs before returning to the pocket. He further testified that, despite

having already developed probable cause in his opinion to reach into the pocket, he

nonetheless manipulated the pocket’s contents for additional confirmation before

further intruding on defendant’s privacy by reaching into the pocket.

 This testimony is competent evidence supporting the trial court’s finding of fact

that it was immediately apparent to Captain Pittman during a flat-handed Terry pat-

down that the pocket contained contraband, before he subsequently manipulated the

contents of the pocket. Therefore, finding of fact 5 is binding on appeal. Cooke, 306

N.C. at 134, 291 S.E.2d at 619. We now turn to the more nuanced question of law

raised by defendant’s appeal.

 b. “Immediately Apparent”

 The question of law before us is whether the results of the presumptively-valid

Terry frisk conducted by Captain Pittman justified his subsequent intrusion into

defendant’s pocket under Dickerson and its progeny. In other words, whether the

trial court erred in its legal conclusion that it was “immediately apparent” to Captain

Pittman that defendant’s pocket contained contraband.

 - 12 -
 STATE V. JOHNSON

 Opinion of the Court

 Probable cause to extend a Terry frisk for weapons into a search within the

pockets of a suspect’s clothing requires that the searching officer “feel[ ] an object

whose contour or mass makes its identity [as contraband] immediately apparent[.]”

Dickerson, 508 U.S. at 375, 124 L. Ed. 2d at 346. In State v. Briggs, we clarified that

“immediately apparent” is synonymous with probable cause to believe the object is

contraband. 140 N.C. App. 484, 493, 536 S.E.2d 858, 863 (2000).

 “Probable cause exists where the facts and circumstances
 within [an officer’s] knowledge, and of which [he] had
 reasonably trustworthy information, [are] sufficient in
 themselves to warrant a man of reasonable caution in the
 belief that an offense has been or is being committed,” and
 that evidence bearing on that offense will be found in the
 place to be searched.

State v. Pigford, 248 N.C. App. 797, 800, 789 S.E.2d 857, 860 (2016) (alterations in

original) (internal quotation marks omitted) (quoting Safford Unified Sch. Dist. No.

1 v. Redding, 557 U.S. 364, 370, 174 L. Ed. 2d 354, 361 (2009)).

 The defendant relies heavily on State v. Beveridge, 112 N.C. App. 688, 436

S.E.2d 912 (1993), aff’d, 336 N.C. 601, 444 S.E.2d 223 (1994), in arguing that Captain

Pittman’s incursion into defendant’s pocket was not supported by probable cause.

However, a thorough analysis of our precedent on the plain feel doctrine reveals that

Beveridge represents an outlying fact pattern in a body of law which otherwise

strongly supports the proposition that the “immediately apparent” contraband

requirement is satisfied where, in addition to the surrounding circumstances, the

 - 13 -
 STATE V. JOHNSON

 Opinion of the Court

searching officer testifies to feeling objects consistent with the common methods of

packaging controlled substances. See State v. Rich, No. COA 15-1204, 2016 WL

3887224, at *3 (N.C. Ct. App. July 19, 2016) (“Detective testified that, as he was

lawfully patting down Defendant, he felt ‘items consistent with controlled

substances.’ At that time, Detective had five and a half years of law enforcement

experience, had worked ‘a hundred or more’ drug cases, and was familiar with

cocaine, marijuana, and how those substances are typically packaged. In addition,

Detective thought Defendant was a man wanted by the Sampson County Special

Investigations Division, which investigates all drug activity in the county. Based on

the totality of the circumstances regarding Detective’s lawful pat down, Detective had

probable cause to withdraw the object based on its plain feel through the fabric of

Defendant’s coat.”); State v. Wilson, 112 N.C. App. 777, 782, 437 S.E.2d. 387, 389

(1993) (“ ‘[G]iven what the officer knew about the storage of cocaine, his conclusion

about the character of the plastic baggie [that he felt in the defendant’s waistband

was] reasonable.’ ”) (quoting State v. Buchanan, 178 Wis. 2d 441, 450, 504 N.W.2d

400, 404 (Wis. Ct. App. 1993)); In re Whitley, 122 N.C. App. 290, 293, 468 S.E.2d 610,

612 (1996) (nature of contraband immediately apparent where officer testified that:

(a) during pat-down of defendant’s pants, he felt an object fall from defendant’s

buttocks into the seat of his pants and rest upon his hand on the other side of the

 - 14 -
 STATE V. JOHNSON

 Opinion of the Court

fabric, (b) “which with [his] personal experience as a law enforcement officer, gave

[him] the probable cause to believe that it was some type of illegal substance”).

 The specific identity of the narcotics in a small bag containing a powdered

substance need not be immediately identifiable by touch for its illicit nature to be

“immediately apparent” to an experienced law enforcement officer conducting a pat-

down. See State v. Richmond, 215 N.C. App. 475, 481, 715 S.E.2d 581, 585-86 (2011)

(“[U]nder the plain feel doctrine, to conduct a search an officer need only have

probable cause to believe the object felt during the pat down was contraband before

he seized it, not that he determine the specific controlled substance before taking

action. . . . [T]he probable cause determination[ ] involves more of a common-sense

determination considering evidence as understood by those versed in the field of law

enforcement.”) (internal quotation marks and citations omitted).

 Based upon officer testimony very similar to the instant case, in Richmond we

upheld the trial court’s finding that the officer who felt small bags in the defendant’s

pocket had probable cause to justify further intrusion. The officer who conducted the

pat-down of the defendant testified as follows:

 [Defense counsel:] So, if your hands are out, then how
 could you determine that what was in his pocket was some
 sort of contraband?

 [Investigator Dunkley:] Through six years of doing this job,
 knowing what it feels like.

 Q. What did it feel like?

 - 15 -
 STATE V. JOHNSON

 Opinion of the Court

 A. A knot of lumps. I don’t know how else to describe it to
 you.

 Q. Did you have your hands out—just with your hands flat
 out, you could feel a knot of lumps?

 A. Yes, ma’am. They got good feeling in them.

 ....

 Q. And somehow with this pat-down for weapons, you felt
 a knot of something?

 A. Yes.

 Q. And why would that be considered contraband in your
 experience?

 ....

 A. Because I discovered that same thing many times.

 Q. But what was it when you discovered it before?

 A. Bags of marijuana, bags of cocaine, bags of crack.

Id. at 481-82, 715 S.E.2d at 586. We held this testimony supported the trial court’s

finding that, “[b]ased on the officer’s training and experience,” it was immediately

apparent to him that the “bumpy bulge” in the defendant’s pocket was a controlled

substance, and therefore the officer’s further intrusion into the defendant’s pocket to

retrieve the bulge was supported by probable cause. Id. at 482, 715 S.E.2d at 586

(alteration in original).

 - 16 -
 STATE V. JOHNSON

 Opinion of the Court

 In contrast, the searching officer’s testimony in Beveridge was lacking in

several regards and the facts differed from the more traditional scenario where an

officer feels immediately recognizable corner bags of narcotics during a pat-down. In

State v. Williams, we aptly distinguished the facts of Beveridge on the following

grounds:

 [I]n Beveridge, the officer, during his pat down of
 defendant, felt in defendant’s front pocket a “rolled up
 plastic bag, it was a large size plastic bag rolled up[;][i]t
 was cylindrical in his pocket long.” 112 N.C. App. at 689,
 436 S.E.2d at 913. In its application of the plain feel
 doctrine, this Court noted that the officer’s testimony
 “indicates that he did not know that the bag contained
 contraband until he asked the defendant to turn out his
 pockets and show him the contents in his hands[,]” and
 therefore, it “was not immediately apparent to him that the
 [baggy] held contraband.” Id. at 696, 436 S.E.2d at 916.

No. COA09-837, 2010 WL 1957862, at *6 (N.C. Ct. App. May 18, 2010) (emphasis in

original). Thus, the shape of the bag that the officer felt in the defendant’s pocket

differed from the traditional cluster of lumps that officers in the aforementioned cases

have immediately recognized as bags of narcotics. Probable cause to extend the pat-

down into a pocket search requires surrounding circumstances more indicative of

illicit drug activity in the former scenario than in the latter, where the officer feels

what in his experience is consistent with a bag of controlled substances. See Briggs,

140 N.C. App. at 493-94, 536 S.E.2d at 863-64 (where searching officer felt cigar

 - 17 -
 STATE V. JOHNSON

 Opinion of the Court

holder, more detailed analysis of surrounding circumstances was necessary to

determine whether it was immediately apparent that it held narcotics).

 For example, in Williams we held that the officer had probable cause to remove

a bag from the defendant’s pocket during a pat-down even though the defendant was

not suspected of being involved in any drug activity. 2010 WL 1957862, at *5-6. The

searching officer was on patrol looking for a suspect in a recent armed robbery. Id.

at *1. The defendant, who matched the suspect’s description, was walking in a nearby

“high-crime area.” Id. Believing the defendant could be armed, the officer asked the

defendant to remove his hands from his coat pockets. Id. At this point, the defendant

“stopped walking and his whole body locked up[.]” Id. Then, after initially ignoring

the officer’s commands, he walked towards the officer’s patrol vehicle and removed

several items from his pockets and placed them on the vehicle. Id. In so doing, the

defendant exposed the top of a plastic baggy still within his coat pocket. Id. Believing

the defendant to be the armed suspect from the robbery, the officer conducted a Terry

frisk for weapons and felt in the defendant’s coat pocket a bulky item that he

immediately knew from his experience was consistent with a bag containing a large

“crack cookie” surrounded by smaller pieces that “are broken off to be sold

individually as crack rocks.” Id.

 That officer testified extensively regarding his knowledge of how crack cocaine

is cooked in bulk and then broken up for individual sales, and that in his past

 - 18 -
 STATE V. JOHNSON

 Opinion of the Court

experience bags containing bulk amounts of crack felt exactly like the object in the

defendant’s pocket. Id. We held that the officer had probable cause to extend his

Terry pat-down and pull the bag from defendant’s pocket, despite the lack of any

suspicion that the defendant was involved in drug activity, primarily based upon the

defendant’s behavior upon being stopped and the officer’s knowledge that what he

felt was consistent with a “crack cookie.” Id. at *5-6. Williams is unpublished.

Nonetheless, it persuasively speaks to the proposition that probable cause to extend

a pat-down into a pocket search requires less reliance on surrounding circumstances

indicating illicit drug activity when the officer knows from experience that the object

he feels is identical to a common method of packaging narcotics.

 This principle applies equally to the case sub judice. Here, Captain Pittman

and Sergeant Scott gave detailed testimony similar to that of the searching officers

in Richmond and Williams. When Captain Pittman approached defendant and

requested that he end his phone conversation, defendant immediately began looking

nervously from side to side and over Captain Pittman’s shoulder and shifting his

weight from foot to foot. Captain Pittman testified that to him “that was indicative

of someone who was about to flee or about to fight[,]” and that “his nervousness made

[Captain Pittman] nervous.” Captain Pittman then requested to pat defendant down

for weapons, to which he consented after some nervous hesitation.

 - 19 -
 STATE V. JOHNSON

 Opinion of the Court

 Captain Pittman testified that during the pat-down he “felt something unusual

in [defendant’s] right front pocket that was immediately apparent to me that was

associated with the packaging normally used to package and sell narcotics. . . . I[n]

my experience, I have felt that before, and [what] I liken it to is [ ] a soft, rubbery feel,

maybe like a wad of rubber bands. And oftentimes in my past experience, what I

have determined is that that’s usually plastic bags, little corner baggies, and a lot of

times those are used to [ ] package and sell crack cocaine, powder cocaine, other illicit

substances, and individuals—they’re dosage units, and individuals will put those

dosage units on their person. And in the past I have found those items, and so I

identified it when I felt it. It immediately came to me, the possibility of what it could

be.” (emphasis added).

 Sergeant Scott offered additional testimony on the nature of corner bags as the

preferred method for packaging narcotics. As he explained, “They usually have the

corner of the plastic baggie, because it allows the narcotic to be placed in the corner.

You tear the baggie off and twist it at the top to form the little individual-type baggie.”

He further testified that, in his ten years of experience on the criminal patrol unit,

drugs are packaged in corner bags in “seven or eight” out of every ten narcotics

arrests.

 Here, defendant acted nervous and shifty when approached by law

enforcement officers. During a valid, consensual Terry pat-down, Captain Pittman

 - 20 -
 STATE V. JOHNSON

 Opinion of the Court

felt objects in defendant’s pocket that from experience he knew were consistent with

corner bags, the most common means of packaging illicit drugs. Therefore, the trial

court did not err in concluding that it was “immediately apparent” to Captain Pittman

that the objects were contraband, and that his subsequent manipulation of the objects

and search of defendant’s pocket for confirmation was therefore supported by

probable cause. Accordingly, the trial court did not err in denying defendant’s motion

to suppress the evidence taken from his pocket at trial.

 III. Conclusion

 For the foregoing reasons, we affirm the trial court’s order denying defendant’s

motion to suppress evidence obtained from the search of his person.

 AFFIRMED.

 Judges BERGER and COLLINS concur.

 - 21 -