IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-149

No. COA20-211

Filed 20 April 2021

Burke County, Nos. 18 CRS 1393-94

STATE OF NORTH CAROLINA

v.

CAMERON DIAMOND DEJUAN WALTON

Appeal by defendant from judgment entered 8 October 2019 by Judge Julia Lynn Gullett in Burke County Superior Court. Heard in the Court of Appeals 23 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General T. Hill Davis, III, for the State.*

*Helton, Cody & Associates, by Blair E. Cody, III, for defendant.*

ARROWOOD, Judge.

¶ 1 Cameron Diamond Dejuan Walton ("defendant") appeals from judgment entered 8 October 2019 following his guilty plea to felony trafficking in opium. Defendant contends that the trial court erred in denying his motions to suppress and dismiss and in denying his request to make an offer of proof. For the following reasons, we affirm the trial court's judgment.

I.     Background

¶ 2          On 13 December 2018, a Burke County grand jury indicted defendant for trafficking in opium or heroin by possession; possession with intent to manufacture, sell, or deliver cocaine; carrying a concealed weapon; and possession of a controlled substance on prison/jail premises.  Defendant filed a motion to suppress the evidence supporting his indictment on 12 August 2019.  On 30 August 2019, defendant filed an amended motion to suppress, and on 2 October 2019 defendant filed a "Motion to Dismiss/Suppress."

¶ 3          Defendant's motions were heard at the 7 October 2019 criminal session of Burke County Superior Court.  The relevant facts from the suppression hearing are as follows.

¶ 4          On 5 April 2018, Officer Jesse Simmons ("Officer Simmons") of the Valdese Police Department observed a gold four-door Lexus traveling at an estimated 45 miles per hour in a 35 mile per hour zone shortly after midnight.  Officer Simmons verified the speed with a radar gun and upon following the vehicle observed that he could not see inside the vehicle's windows.  Officer Simmons initiated a traffic stop in a nearby parking lot.

¶ 5          Upon approaching the vehicle, Officer Simmons noted that defendant was the driver and sole occupant and informed defendant that he had been stopped for speeding and window tint.  Officer Simmons observed that the windows were not illegally tinted but were instead darkened by electric window shades.  While speaking

with defendant, Officer Simmons noticed "a slight odor of marijuana coming from the car[,]" that seemed "covered up with some kind of cologne." At the hearing, Officer Simmons testified that he had received training in the detection of marijuana by scent.

¶ 6        After the initial conversation, Officer Simmons returned to his car to begin checking the status of defendant's driver's license and to determine whether defendant had any warrants. Officer Simmons also called Deputy Tim Branch ("Deputy Branch") of the Burke County Sheriff's Office to bring his K-9 unit to perform a drug sniff of defendant's vehicle. Officer Tyler Angley ("Officer Angley") of the Valdese Police Department was also dispatched to serve as a cover officer during the stop.

¶ 7        Officer Simmons returned to defendant's vehicle to perform a field sobriety test on the basis of defendant's speeding and erratic turn into the parking lot. Officer Simmons noted that the scent of cologne had faded and the odor of marijuana had grown stronger. After defendant got out of his car, Officer Simmons administered the horizontal gaze nystagmus ("HGN") field sobriety test and observed no sign of impairment. While administering the test, Officer Simmons informed defendant that he "smelled marijuana coming from the car[,]" which defendant denied.

¶ 8        Officer Simmons asked defendant to return to his vehicle, and Officer Simmons returned to his car to issue a written warning for speeding and unsafe movement.

While Officer Simmons was in his car writing the warning ticket, Deputy Branch arrived on the scene with his dog and performed a sniff search of defendant's vehicle. The dog alerted to the presence of narcotics in defendant's vehicle.

¶ 9    After Deputy Branch informed Officer Simmons that the dog had alerted on defendant's car, Officer Simmons returned to defendant's vehicle and asked "if there was anything he would like to tell me about in the vehicle." Defendant said no. Officer Simmons asked defendant to step out of the vehicle, but defendant refused; when Officer Simmons opened the car door and repeated his request, defendant shut and locked the door and "placed his hands on the gear shifter as if he was going to put the car into gear." Officer Simmons requested backup and drew his taser, advising defendant that he would be tased if he did not exit the vehicle. Defendant then exited the vehicle.

¶ 10    Officer Simmons asked defendant if there was anything in the vehicle. Defendant stated that there was a gun under the seat. Officer Simmons entered the vehicle to retrieve the gun, and in a subsequent search found cocaine, digital scales, synthetic opioids, and $1,483.00 in cash.

¶ 11    The time elapsed between the initial stop and defendant's refusal to exit his vehicle was sixteen minutes. The time elapsed between the initial stop and the arrival of the police dog was twelve minutes. The police dog and his handler were at the scene for a total of eight minutes, and the dog took less than one minute to

perform the sniff.

¶ 12   At the hearing, the State introduced evidence regarding the training and reliability of the police dog. Deputy Branch testified that the dog was certified for narcotics detection by both the United States Law Enforcement Canine Association and the North American Police Working Dog Association.

¶ 13   Defendant's trial counsel offered the testimony of Officer Angley, the cover officer at the scene, and Toni Bartlett ("Bartlett"), whose home defendant had left just prior to being stopped. This testimony was offered to provide evidence of the relationship between Officer Angley and Bartlett's daughter, but most of the evidence was excluded by the trial court. Defendant was allowed to make an offer of proof with a limited scope not to include proof related to any relationship between Officer Angley and Bartlett's daughter.

¶ 14   At the conclusion of the hearing on 8 October 2019, the trial court denied defendant's motion to suppress. Defendant subsequently pleaded guilty to the charge of felony trafficking in opium or heroin by possession with the remaining charges dismissed. The trial court sentenced defendant to a term of 16 to 29 months imprisonment, suspended on the condition that defendant serve 30 months of supervised probation, as well as an intermediate sanction of 7 months imprisonment.

## II.   Discussion

¶ 15   Defendant contends that the trial court erred in denying the motions to

suppress and to dismiss, in denying defendant's request to make an offer of proof during the pretrial motion to suppress, and in finding that the police dog was proficient in detecting drugs.

### A.    Motions to Suppress & Dismiss

¶ 16    Defendant argues that the trial court erred in denying the motions to suppress and to dismiss because there was an improper prolonging of the stop, and the stop was made without probable cause or reasonable and articulable suspicion. We disagree.

### 1.    Standard of Review

¶ 17    " 'The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law.' " *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (quoting *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012)). A trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (quotation marks and citation omitted). "[O]nly a material conflict in the evidence—one that potentially affects the outcome of the suppression motion—must be resolved by explicit factual findings that show the basis for the trial court's ruling." *State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015) (citations omitted).

¶ 18        If there is no material conflict in the evidence, this Court may review the undisputed factual record when determining whether the trial court's ruling was correct. *State v. Lovin*, 339 N.C. 695, 706, 454 S.E.2d 229, 235 (1995). "If there is no conflict in the evidence on a fact, failure to find that fact is not error[,]" and the finding is implied by the ruling of the court. *State v. Richmond*, 215 N.C. App. 475, 479, 715 S.E.2d 581, 585 (2011) (citation omitted).

### 2.        Reasonable Suspicion

¶ 19        A traffic stop is a seizure even if the purpose of the stop is limited and the resulting detention is brief. *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quotation marks and citation omitted). The necessary standard for stops based on traffic violations is "based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968)). To determine whether reasonable suspicion exists, courts must look to the totality of the circumstances as viewed from the standpoint of an objectively reasonable police officer. *State v. Johnson*, 370 N.C. 32, 34-35, 803 S.E.2d 137, 139 (2017) (citations omitted). The reasonable suspicion standard applies to all traffic stops for traffic violations "whether the traffic violation was readily observed or merely suspected." *Styles*, 362 N.C. at 415, 665 S.E.2d at 440. This standard is

less demanding than probable cause, and "requires a showing considerably less than preponderance of the evidence." *Id.* at 414, 665 S.E.2d at 439 (citation omitted). The standard is satisfied if an officer reasonably believes that a driver has violated the law. *Johnson*, 370 N.C. at 38, 803 S.E.2d at 141.

¶ 20   In this case, there was competent evidence to support the trial court's determination that Officer Simmons had reasonable suspicion to stop defendant's car. Officer Simmons personally observed defendant driving his car at a speed of 45 miles per hour in violation of the posted 35 mile per hour speed limit and verified his observation by measuring defendant's speed with the radar gun. In addition to the speeding violation, which would alone be sufficient to satisfy the reasonable suspicion standard, Officer Simmons also observed that defendant's car had what appeared to be tinted windows, allowing Officer Simmons to reasonably believe that defendant was violating a window tinting law. Accordingly, there was competent evidence to support the trial court's determination that Officer Simmons had reasonable suspicion to initiate the traffic stop.

¶ 21   Defendant additionally contends that Officer Simmons impermissibly extended the stop beyond his investigation into speeding and window tint to include impaired driving. We disagree.

¶ 22   The scope of detention incident to a traffic stop generally must be tailored to the purpose of the stop. *State v. Kincaid*, 147 N.C. App. 94, 98, 555 S.E.2d 294, 298

(2001). A traffic stop should generally not extend the duration of the stop beyond the time reasonably required to complete the "mission" of the stop, as well as attending to related safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 354, 191 L. Ed. 2d 492, 498 (2015). An officer may inquire into matters unrelated to the justification for the stop, however, "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, 172 L. Ed. 2d 694, 704 (2009) (citation omitted). Stops may be extended if there is additional reasonable suspicion to do so. *State v. Heien*, 226 N.C. App. 280, 286-87, 741 S.E.2d 1, 5 (2013).

¶ 23        In this case, Officer Simmons initially stopped defendant for speeding and a suspected window tint violation and was permitted to continue the stop for the length of time required to conduct initial license and warrant checks and to issue the written warning. Officer Simmons extended the stop for further investigation into the odor of marijuana coming from defendant's car, which was based on the additional reasonable suspicion of Officer Simmons' observation of a marijuana odor. The time elapsed between the initial stop and the arrival of the police dog was twelve minutes, and the police dog was on the scene for eight minutes. The police dog performed the sniff and alerted on defendant's car while Officer Simmons was still in the process of writing the warning ticket. Because the mission of the initial stop had not yet been completed at the time the police dog alerted and in light of the circumstances, we hold that there was sufficient reasonable suspicion for the duration of the stop and that

the stop was not impermissibly extended.

### 3.     Probable Cause

Defendant argues there was no probable cause to extend the stop after Officer Simmons determined there was not a window tint violation. We disagree.

Probable cause is not a "finely tuned standard" but instead requires "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Florida v. Harris*, 568 U.S. 237, 243-44, 185 L. Ed. 2d 61, 67 (2013). The odor of marijuana "may form the basis of probable cause for a warrantless search of a vehicle." *State v. Corpening*, 109 N.C. App. 586, 589, 427 S.E.2d 892, 894-95 (1993) (citing *State v. Greenwood*, 301 N.C. 705, 273 S.E.2d 438 (1981)). Because illegal drugs are easily hidden or destroyed, the odor of marijuana generally creates "exigent circumstances justifying an immediate warrantless search." *State v. Yates*, 162 N.C. App. 118, 123, 589 S.E.2d 902, 905 (2004).

Here, Officer Simmons testified that although he incorrectly suspected that defendant had committed a window tint violation, he could smell marijuana with increasing intensity throughout the stop. Officer Simmons also provided testimony regarding his training and expertise in recognizing the odor of marijuana. The police dog's alert then provided additional probable cause to search the vehicle. Based on these circumstances, the trial court did not err in finding that there was probable cause to search defendant's vehicle.

### B.     Offer of Proof

¶ 27      Defendant next contends that the trial court erred in denying defendant's request to make an offer of proof during the pretrial motion to dismiss. We disagree.

¶ 28      For a party to preserve the exclusion of evidence for appellate review, the significance of the excluded evidence must be apparent in the record and "a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citation omitted). A trial court may limit an offer of proof by allowing counsel to articulate what a defendant's showing would have been by identifying witnesses and presenting a detailed forecast of evidence for the record. *State v. White*, 349 N.C. 535, 567, 508 S.E.2d 253, 273 (1998).

¶ 29      The ultimate question is whether a defendant is prejudiced by the denial of an offer of proof. *State v. Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978). The essential content or substance of the witness's testimony must be shown before ascertaining whether prejudicial error occurred. *Simpson*, 314 N.C. at 370, 334 S.E.2d at 60 (citation omitted). If there is no reasonable possibility that the trial court's denial affected the result, any error in refusing the offer is harmless. *State v. Mackey*, 352 N.C. 650, 661, 535 S.E.2d 555, 561 (2000).

¶ 30      In this case, defendant's trial counsel was permitted to make an offer of proof after articulating that Bartlett's daughter's testimony regarding the relationship was

relevant in the context of the stop. This offer of proof provided a forecast of evidence showing that Officer Angley had a prior relationship with Bartlett's daughter, that Officer Angley had eaten dinner at the Bartlett residence on several occasions, and that defendant had left the Bartlett residence just prior to the stop. The trial court only refused to allow a specific offer of proof with respect to the particular details of the relationship between Officer Angley and Bartlett's daughter on the grounds that these details were irrelevant to the probable cause at issue in the case. However, because the fact of the relationship was presented to the court, there was sufficient detail forecasted in the offer of proof.

¶ 31        Furthermore, the development of reasonable articulable suspicion was formed independently by Officer Simmons; Officer Angley testified that his involvement at the scene was "very little," and his testimony was largely irrelevant to the trial court's findings of fact. Due to the limited connection between the excluded evidence and the trial court's ultimate findings and conclusions, we hold that no prejudicial error occurred.

## C.        Police Dog Proficiency

¶ 32        Defendant argues that the trial court erred in finding that the police dog was proficient in detecting drugs, alleging that the police dog and Deputy Branch were not in compliance with department policies as to training and utilization and that the police dog's certification had expired. We disagree.

¶ 33        The United States Supreme Court has provided a framework for assessing a

police dog's reliability, emphasizing that a police dog's reliability is best measured in

controlled testing environments:

> [E]vidence of a dog's satisfactory performance in a
> certification or training program can itself provide
> sufficient reason to trust his alert.  If a bona fide
> organization has certified a dog after testing his reliability
> in a controlled setting, a court can presume (subject to any
> conflicting evidence offered) that the dog's alert provides
> probable cause to search.  The same is true, even in the
> absence of formal certification, if the dog has recently and
> successfully completed a training program that evaluated
> his proficiency in locating drugs.    After all, law
> enforcement units have their own strong incentive to use
> effective training and certification programs, because only
> accurate drug-detection dogs enable officers to locate
> contraband without incurring unnecessary risks or
> wasting limited time and resources.

*Harris*, 568 U.S. at 246-47, 185 L. Ed. 2d at 69.  A defendant may challenge evidence

of a dog's reliability by contesting the adequacy of a certification or training program,

how the dog or handler performed in those assessments, and how the dog or handler

has performed in the field.  *Id.* at 247, 185 L. Ed. 2d at 69.  "The question—similar to

every inquiry into probable cause—is whether all the facts surrounding a dog's alert,

viewed through the lens of common sense, would make a reasonably prudent person

think that a search would reveal contraband or evidence of a crime."  *Id.* at 248, 185

L. Ed. 2d at 70.

¶ 34        In this case, the State presented evidence that the police dog had been certified

a total of five times by two different organizations, with three certificates prior to the search in this case and two certifications between the time of the search and the suppression hearing. Although defendant argues that one of the prior certifications was expired at the time of the search, defendant makes no argument that the substance of the certification was deficient. In *Harris*, the Supreme Court found the dog to be reliable even though its certification had expired one year prior to the search at issue. *Id.* at 248, 185 L. E. 2d. at 70. The certification in this case similarly expired less than one year before the search at issue. Furthermore, the dog in this case did still have one non-expired certification still in effect. Accordingly, there was sufficient evidence of the dog's certification and training for the reliability analysis.

¶ 35       Defendant further alleges error with respect to Deputy Branch's adherence to the utilization policy and departmental guidelines, specifically regarding the gap in training between 11 January 2018 and 31 January 2019. Defendant also acknowledges that North Carolina does not currently require any specific service dog training or requirements, although Burke County does require animals to be trained as a part of their policy requirements. Although the substance of the police dog's training and Deputy Branch's adherence to relevant guidelines are part of the overall inquiry, whether the dog is reliable is determined in the totality of the circumstances. Based on the totality of the circumstances in this case, the trial court did not err in finding that the police dog was reliable and proficient.

III.    Conclusion

For the forgoing reasons, we hold that the trial court did not err in denying defendant's motions to suppress and to dismiss, and further hold that the trial court did not otherwise err in defendant's case.

AFFIRMED.

Judges CARPENTER and GORE concur.